THOMAS D'ANGELO et al., Doing Business as TRIPLE CITIES CONSTRUCTION COMPANY, et al., Claimants, *v.* STATE OF NEW YORK, Defendant. (Claim No. 31803.)

Court of Claims, April 22, 1954.

*Israel Margolis, Herbert M. Matties* and *Bernard H. Chernin* for claimants.

*Nathaniel L. Goldstein, Attorney-General (Donald C. Glenn* of counsel), for defendant.

LOUNSBERRY, P. J. This claim arises from a contract for the reconstruction of the Cochecton-Damascus Bridge, which crosses the Delaware River from Sullivan County, New York, to Wayne County, Pennsylvania. The State has moved to dismiss the contractor's claim on the ground that the claim is actually against the New York-Pennsylvania Joint Interstate Bridge Commission rather than against the State of New York; that said joint commission is immune from suit, and that therefore this court has no jurisdiction to hear or determine the matter.

By chapter 506 of the Laws of 1916 which is now, with some amendments, article 2-B of the Public Works Law, the Legislature created an interstate bridge commission to consist of the State engineer and surveyor, the Superintendent of Public Works, and the State Highway Commissioner, which together with a similar board or commission of the Commonwealth of Pennsylvania was to constitute a joint interstate bridge commission. Similar legislation was adopted by the Commonwealth of Pennsylvania. By subsequent amendment, the New York Interstate Bridge Commission came to consist solely of the Superintendent of Public Works or his authorized representative.

The purpose of this legislation was the acquisition and maintenance of privately owned toll bridges across the Delaware River between New York and Pennsylvania. Pursuant thereto the joint commission did acquire ten such bridges and thereafter did maintain them at the joint expense of the two States, as provided by said chapter.

Section 63 of said chapter, now a portion of section 36 of the Public Works Law, empowered the New York Interstate Bridge Commission to enter into agreements with the Department of Highways of Pennsylvania for the reconstruction of such bridges, which agreements might provide for the making of plans, the letting of contracts, and the supervision of construction by either State, or by both States jointly, the expense to be divided equally. In carrying out any such agreement, the New York Interstate Bridge Commission, acting through the Superintendent of Public Works, was granted the same rights and powers as are vested by law in the Superintendent of Public Works with relation to the construction of State highways and bridges. Upon completion, such bridge was to be in the charge of the Joint Interstate Bridge Commission.

Pursuant to the foregoing, the Department of Public Works of New York and the Department of Highways of Pennsylvania entered into an agreement December 11, 1936, which recited the acquisition of the ten bridges, and provided that five specified bridges should be maintained by New York and five specified bridges by Pennsylvania, all at joint expense. Among those to be maintained by New York was the Cochecton–Damascus bridge. The agreement further provided that whenever the joint commission should decide to reconstruct or replace any bridge, said Department of Public Works and said Department of Highways would then enter into a further agreement which would provide that the Department which had been responsible for the maintenance of the particular bridge in question would make the plans (to be approved by the other Department), advertise for bids, award the construction contracts, and supervise the work of construction. All expenditures thus incurred were to be audited and approved by the joint commission, payments were to be shared equally by each State, and, before final payment, the work was to be accepted by both Departments.

On August 22, 1944, the State of New York, acting through the Superintendent of Public Works, and the Commonwealth of Pennsylvania, acting through its Department of Highways, entered into a further agreement, which recited that the Joint Interstate Bridge Commission had decided that the Cochecton–

Damascus Bridge should be replaced, and had so notified the New York State Department of Public Works and the Pennsylvania Department of Highways, and provided that the Department of Public Works of New York should prepare the necessary plans, to be approved by the Department of Highways, and that the expense thereof should be shared equally.

On June 5, 1950, the same parties entered into a further agreement with respect to the same bridge, reciting that the plans had been made and approved, and providing that the New York Interstate Bridge Commission, through the Superintendent of Public Works, was to advertise for bids, award the contracts, and supervise the construction. Except for the respective approaches, the cost was to be borne equally by the two States. The New York Interstate Bridge Commission was to submit to the joint commission monthly estimates of the work done in the preceding month, which the joint commission was to audit and approve.

All three of the above agreements bore the approval of the Joint Interstate Bridge Commission, although it was not named as a party to any of them.

Subsequently, the Department of Public Works advertised for bids on the bridge project together with a number of other State projects. The advertisement was in the usual form employed by the Department of Public Works, and made no mention either of the New York Interstate Bridge Commission or of the Joint Interstate Bridge Commission. Nothing in the advertisement suggested that the proposed bridge construction was other than a regular New York Department of Public Works project.

The proposal to be submitted by bidders, the information for bidders, and the specifications were all in standard New York State Department of Public Works form, with no mention of any New York Interstate Bridge Commission or Joint Interstate Bridge Commission, nor any suggestion that any party other than the Department of Public Works might be involved.

The claimant was the successful bidder, and on August 2, 1950, executed a standard printed State of New York, Department of Public Works, Division of Construction, agreement for the construction of the bridge. The stated parties to the contract were the People of the State of New York, acting by and through the Superintendent of Public Works, pursuant to the Highway Law, and the Triple Cities Construction Company. The contract was in all respects the usual Department of Public

Works form, without any reference to or mention of the New York Interstate Bridge Commission or the Joint Interstate Bridge Commission or the laws creating these commissions. Subsequent to its execution by the claimant, however, there was added at the end the signature of the Commonwealth of Pennsylvania, by its Secretary of Highways, and an approval by the New York-Pennsylvania Joint Interstate Bridge Commission.

The performance bond and labor and material bond furnished by the claimant, and approved by the office of the Attorney-General, ran only to the People of the State of New York, without any mention of the Commonwealth of Pennsylvania, the New York Interstate Bridge Commission, or the Joint Interstate Bridge Commission. There is no indication that it was submitted to, or approved by either the joint commission or the Commonwealth of Pennsylvania. The performance of the actual construction work was supervised by the Department of Public Works.

Upon completion of the work the customary dispute arose as to the final amount due the claimant, whereupon the claimant brought this action against the State of New York under the Court of Claims Act. At this point the State interposed its motion to dismiss, on the grounds that the Department of Public Works was acting only as an agent for the Joint Interstate Bridge Commission, which therefore was the true party to the contract; that said Joint Commission is a joint agency of the States of New York and Pennsylvania, and therefore is clothed with sovereign immunity of both States; and that such sovereign immunity was not waived by the Court of Claims Act, and, indeed, could not be waived by that act, since the immunity of Pennsylvania is involved as well as that of New York. In support of its position the State cites a number of cases holding the Port of New York Authority immune from suit.

It is our conclusion that the State's position is not well taken. We are satisfied that under the legislation and agreements above summarized the State, through the Department of Public Works, had the power to enter into a contract for the construction of the bridge; that it did enter into such a contract; that under such contract it is obligated for any lawful claim of the claimant to the same extent and in the same manner as it is obligated under any contract for the construction of public works; that the Joint Interstate Bridge Commission was not a party to such contract; and that this court has jurisdiction to hear and determine the claim.

Said legislation authorizes either State, or both States jointly, to enter into construction contracts. Nowhere does it authorize the Joint Interstate Bridge Commission to do so. The State so interpreted the law when it entered into the agreement of December 11, 1936, providing that the reconstruction of a bridge would be performed by the State charged with the maintenance thereof, and into the further agreements above mentioned providing that the reconstruction of the particular bridge in question would be performed by the New York State Department of Public Works. It seems clear from both the statute and the agreements that the actual construction of the bridge was the sole responsibility of the State of New York, the role of Pennsylvania being limited to approval of the plans, approval of the completed work, and payment of its share of the cost. The role of the Joint Interstate Bridge Commission was limited to audit of payments. These limited roles did not make either the Commonwealth of Pennsylvania or said joint commission parties to the construction contract.

It may be urged that the Superintendent of Public Works, in making the construction agreement, did so in his capacity as the New York Interstate Bridge Commission. There is no definite requirement in the statute that he act in such special capacity only; he certainly did not so act; and even if he had done so, it would make no legal difference since the New York Interstate Bridge Commission is clearly as much an agency or arm of the State of New York as is the Department of Public Works. The superintendent could bind the State in whichever capacity he acted.

The procedure followed and the instruments employed clearly indicate an intention that construction agreement was between the State and the claimant only. Not only was there no indication to the claimant that any party other than the State might be involved, but there were definite indications that only the State of New York could be involved. For example, the contract required the claimant to give preference in employment to New York residents, pursuant to the Labor Law; it required the payment of the minimum wages prescribed for employment on New York public projects; the contract was recited to be made pursuant to the New York Highway Law; the bonds ran only to the State of New York. These items are hopelessly inconsistent with any interpretation that the Commonwealth of Pennsylvania or the joint commission were parties.

The fact that Pennsylvania must ultimately share the cost of reconstruction does not alter our view. That is simply a

matter of settlement between the two States; the claimant was not concerned with it, and in any event could look only to the State of New York for his compensation. We can discover no right of action by him against either the Commonwealth of Pennsylvania or the Joint Interstate Bridge Commission. (See *Johnson* v. *State of New York,* 172 Misc. 776.)

The cases involving the Port of New York Authority are not controlling. First, this is not an action against the Joint Commission. Second, there are great differences in the status of the Joint Interstate Bridge Commission and the Port of New York Authority. The Port Authority is a body corporate, with the power to contract, to construct, to borrow, and to mortgage. The Joint Commission has none of these attributes; it is a joint agency of very limited power. Comparison can not successfully be made. The motion of the State is accordingly denied.